UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CLARK SHANK, | No. 1:20-cv-01644-GSA |
| Plaintiff, | |
| v. | **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| KILOLO KIJAKAZI, acting Commissioner of Social Security, | |
| Defendant. | **(Doc. 20, 23)** |

## I.     Introduction

Plaintiff Robert Clark Shank ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 20, 23–24.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore denied.

## II.     Factual and Procedural Background[2]

On September 18, 2018 Plaintiff applied for supplemental security income.  AR 323–33. The Commissioner denied the application initially on January 31, 2019, and on reconsideration April 24, 2019. AR 256–66.  Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on April 1, 2020.  AR 143–77.  On April 27, 2020 the ALJ issued a decision denying Plaintiff's application.  AR 19–37.  The Appeals Council denied review on September 28, 2020.  AR 1–6.  On November 19, 2020, Plaintiff filed a complaint in this Court.  Doc. 1.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 8 and 9.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

1

2

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.    "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).   Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).   It is more than a scintilla, but less than a preponderance.   *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).   If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.   *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).   "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.    42 U.S.C. § 1382c(a)(3)(A).   An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.   20 C.F.R. §§ 416.920(a)-(f).   The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

2

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of September 18, 2018.  AR 24.  At step two the ALJ found that Plaintiff had the following severe impairment: valvular heart disease with history of multiple surgical procedures.  AR 25.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 27.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 416.967(a) with occasional exposure to vibrations and no exposure to unprotected heights, moving mechanical parts, or extreme temperatures.  AR 28.

At step four the ALJ concluded that Plaintiff could not perform his past relevant work as an auto detailer or warehouse worker.  AR 31.  At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: document preparer, surveillance systems monitor, and order clerk.  AR 31–32. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since his application date of September 18, 2018.  AR 32.

## V.     Issues Presented

Plaintiff asserts two claim of error: 1) that the ALJ erred in omitting the sitting limitation from the prior decision without explanation; and 2) that the ALJ erred in rejecting the opinion of psychological consultative examiner Dr. Spivey.

### A.     The Sitting Limitation

#### 1.     Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

 "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough

4

summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

**2.   Analysis**

Pursuant to 20 C.F.R. § 416.967(a):

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary *if walking* and standing are required occasionally and other sedentary criteria are met.

Social Security Ruling 83-10 further provides:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

Plaintiff contends that "where the ALJ omits the limitation in sitting found in the previous decision and adopted by the state agency medical examiners without articulated reason, this court should reverse and remand."  Plaintiff then sets out to establish that "the cases agree that sedentary work does not have a 6-hour limitation on sitting," but that a claimant must be able to sit the full 8 hours to perform sedentary work.  Br. at 6, Doc. 20 (citing *Aukland v. Massanari,* 257 F.3d 1033, 1035 (9th Cir. 2001); *Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999).

In response, Defendant contends the Ninth Circuit has recently rejected a similar argument where a claimant challenged an ALJ's use of the term "medium work" as short-hand when posing hypotheticals to the VE without specifying 6 hours of standing/walking and 2 hours of sitting:

> On appeal, Terry contends that the vocational expert's testimony did not constitute substantial evidence supporting the ALJ's finding regarding the availability of work for someone with Terry's limitations because the ALJ did not reference Terry's six-hour standing and walking limitation in his questioning of the expert.

1

2

. . .

3

Although the ALJ's questions referenced a hypothetical individual with "the capacity to do medium work," Terry argues that there is no reason to assume that the expert understood this to suggest that the hypothetical person had any standing or walking restrictions.

4

5

6

. . .

7

We are not persuaded. "Medium work" is a term of art in disability law with a well-established meaning. 20 C.F.R. § 404.1567(c). While the regulation defining "medium work" does not include any express standing and walking limitation, the Social Security Administration has long interpreted this language to include such a restriction. In a 1983 published Social Security Ruling, the Commissioner interpreted "medium work" to "require[ ] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

8

9

10

11

12

*Terry v. Saul*, 998 F.3d 1010, 1012–13 (9th Cir. 2021).

13

The parties' arguments are better suited for a different case and a different fact pattern.

14

Plaintiff contends the ALJ should have adopted "the limitation in sitting found in the previous

15

decision" (Br. at 5), a limitation he later refers to as "the six-hour limit in sitting."  Br. at 6.  The

16

previous decision does not contain a 6-hour limitation in sitting.  It reflects that Plaintiff can sit 6

17

to 8 hours. AR 206.

18

19

Thus, if Plaintiff's impairments render him physically unable to sit up to a full 8-hour work

20

day (which neither ALJ found, which the record does not appear to support, and which Plaintiff

21

makes no attempt to establish) then neither the current ALJ's RFC, nor the prior ALJ's RFC helps

22

him.  Thus Plaintiff's first claim of error is misplaced.

23

Plaintiff further argues that the step five finding was unsupported because the DOT

24

descriptions of the three jobs identified by the VE "do not lend themselves to the conclusion that

25

the work includes 2 hours of standing or walking every day."  *See* DOT 249.587-018 (document

26

preparer);  209.567-014 (order clerk, food and beverage);  DICOT 279.367-010 (surveillance

27

28

systems monitor).

6

This argument is also predicated on an incorrect reading of the first ALJ's RFC.  The first ALJ's RFC stated 6 to 8 hours of sitting, and the gravamen of Plaintiff's argument is that the second ALJ's use of the term "sedentary work" means 6 to 8 hours of sitting.  The RFCs were therefore identical.  The two hours of standing would be a maximum, not a minimum that must be reached by each identified job.  A job with a 7 to 1 sit to stand ratio, or an 8 to 0 ratio, would still qualify as a sedentary job based on the very authority Plaintiff cites, including the Ninth Circuit's decisions cited above in *Aukland* and *Tackett* (sedentary work requires ability to sit "*most or all of* an eight hour day"), and Social Security Ruling 83-10 ("standing or walking should generally total *no more than about 2 hours* of an 8-hour workday),  Zero hours is indeed "no more than 2 hours."  Therefore, there is no reason why three jobs identified by the VE would need to predicably involve 2 hours of standing time.

Moreover, even if the facts were as Plaintiff envisioned and a 6-hour sitting limitation was articulated by the first ALJ and/or affirmatively supported by the record here, his argument concerning the permissible inferences to be drawn from the DOT job descriptions is nevertheless unavailing.  He asserts that the DOT descriptions of the three jobs identified by the VE do not permit an inference that 2 hours of standing is required.  To the contrary, a cursory review of the DOT description for the first job identified by the VE (document preparer) readily permits such an inference: "Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, *using paper cutter, photocopying machine, rubber stamps, and other work devices.*  DOT 249.587-018 (emphasis added).  Of the four types of instruments used to prepare documents, one of them (photocopying machine) is generally used from a standing position.  The inference that the job requires about two hours of standing is not only permissible, it is the most natural inference to draw.

Finally, Plaintiff contends that "The Court should reverse and remand for the consideration of whether sedentary work *exists* in today's economy."  Br. at 7 (emphasis in original).  At this

point the argument gets a bit confusing as Plaintiff appears to be using the term "sedentary work" in precisely the fashion he argues it cannot be used, namely that it implies a 6-hour limit on sitting. In so doing Plaintiff suggests the entire sedentary exertional category under 20 C.F.R. § 416.967(a) and Social Security Ruling 83-10 is in fact wrong.  But he clearly articulated his belief in the preceding paragraphs that sedentary work is a well-defined category which requires the claimant to sit up to 8 hours in a day, and which implies no limitation on sitting.   Based on his immediately preceding discussion it appears that his intent in the last sentence of his argument was to question whether there are any sedentary jobs in today's economy *which predictably require 2 hours of standing/walking*, not to question whether any sedentary work exists in today's economy.

To summarize, assuming a generous reading of the prevailing law and the existence of sitting limitations (limitations not established here), Plaintiff apparently makes an argument that could perhaps be distilled down as follows: 1) where a claimant's exertional limitations limit him to the sedentary occupational base, but he *also* has sitting limitations such that he can only sit 6 hours in a day (and not 6 to 8), this is a unique set of limitations not entirely addressed by an RFC for "sedentary work"; 2) the 6 hour sitting restriction must be affirmatively added to the RFC because it is not implicit in the definition of sedentary work; and,  3) once that distinct sitting limitation is affirmatively added to the sedentary RFC (and its distinct status perhaps emphasized to the VE), the occupational base will shrink substantially because most (if not all) jobs otherwise qualifying as sedentary do not predictably involve 2 hours of standing time.

Again, it is an interesting legal argument for a different case because: 1) no adjudicator limited Plaintiff to 6 hours of sitting; 2) there is no reason to believe such a limitation is required, and, 3) at least 1 of the jobs identified by the VE (document prepared) would accommodate such a restriction even if it was required.

### B.   Dr. Spivey's Opinion

#### 1.   Applicable Law

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3). The ALJ's duty to further develop the record is triggered only where the evidence is ambiguous or inadequate to allow for proper evaluation. 20 C.F.R. §404.1527(c)(3); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

#### 2.   Analysis

Dr. Spivey conducted a psychological disability assessment on January 5, 2019. AR 651-56. She identified diagnoses of mood disorder not otherwise specified, alcohol dependence in remission, and bereavement. AR 654. She identified moderate limitations in Plaintiff's ability to maintain pace or persistence to complete complex tasks, to withstand the stress of a workday, and to maintain emotional stability and predictability.

The ALJ found Plaintiff's depression and anxiety non-severe, did not include any non-exertional mental limitations in the RFC, and rejected Dr. Spivey's opinion. In finding his depression and anxiety non-severe at step two, the ALJ performed the special technique for evaluation of mental impairments and found no more than mild limitations in any of the four broad

areas of mental functioning (the paragraph B criteria).  In so concluding, the ALJ noted, *inter alia*, that Plaintiff was able to attend to his personal care and hygiene, care for his son, maintain his household, drive, shop, care for his dog, manage his medications, prepare meals, use public transportation, use a computer, read, and manage his finances.  AR 25 (citing Exhibits C3E; C4E; C3F; and hearing testimony).  In adopting the non-severity findings of the non-examining agency psychologists, Drs. Ames-Dennard and Clay, the ALJ noted the lack of any mental health evaluation or treatment.  AR 26.  The ALJ also noted that "the claimant has noted his activities when limited are due to his physiological symptoms and not his mental health."  AR 26.  In specifically rejecting Dr. Spivey's opinion, the ALJ found it inconsistent with his normal and unremarkable mental status examinations and his reported activities of daily living.  AR 27.

Plaintiff's three page argument begins by underscoring that Dr. Spivey performed the only mental health assessment of record.  Br. at 7.  Although this arguably adds to the persuasiveness of the opinion, it is not a dispositive fact as the post-March 27, 2017 regulatory changes eliminated the hierarchy of medical opinions.  *See* 20 C.F.R. § 404.1520c(a) ("[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."

Next, Plaintiff takes issue with the non-examining opinions of Drs. Ames-Dennard and Clay, particularly as to their analysis of Dr. Spivey's earlier dated opinion.  Specifically, Plaintiff takes issue with Drs. Ames-Dennard and Clay's opinion for several reasons including: 1) they characterized Dr. Spivey's mental status examination as "normal" despite non-delayed, immediate recall of only 2 out of 3 objects; 2) they reported the raw score instead of the normed score for memory; 3) Dr. Ames-Dennard did not address the proposition that Plaintiff might have DiGeorge's syndrome; and 4) Dr. Ames-Dennard did not address the wide discrepancy between auditory and visual memory in the average or high average range compared to cognitive functioning as the

bottom of the average range.

Again, these arguments are unsupported. Dr. Spivey's statement concerning the "possibility of DiGeorge's syndrome" is not evidence suggestive of mental limitations. That statement did not need to be addressed, and Plaintiff posits no theory as to how the mere possibility of such a syndrome recognized by one examiner should be factored in to the RFC calculus absent any other evidence or suggestion that he has the syndrome.

As to his immediate recall of 2 out 3 objects and cognitive function at the bottom of average range (the 19th percentile), neither finding self-evidently supports moderate limitations in mental functioning, nor undermines the non-examining psychologists' characterization of Dr. Spivey's mental exam as "normal." Indeed, setting aside immediate object recall, Plaintiff overlooks the other mental status examination findings identified by Dr. Spivey which were almost uniformly normal save for inability to name the governor: no psychomotor disturbance; forthcoming and cooperative attitude and behavior; neutral mood and congruent affect; clear and articulate speech; orientation to person, time and place; unremarkable, rational thought content; linear, goal directed, and organized thought process; ability to spell "World" backwards; and good insight and judgment. AR 652–53.

Plaintiff's discussion of the ALJ's pertinent reasoning was limited to the following:

Dr. Spivey did not assume complaints of mental dysfunction and did not assume the presence of grossly impaired activities of daily living. AR 652–53. Dr. Spivey did assume what she professionally observed, evidence of a learning disability from a true history of special education, cognitive function more than one standard deviation from the mean, observable emotional problems, and a history of significant cardiac malfunction. AR 653–54. Dr. Spivey assumed emotional stability at the time of. The ALJ stated that Dr. Spivey based her opinion on findings inconsistent with the record. The evaluation by Dr. Spivey is consistent with the record. The ALJ stated that Dr. Spivey assumed the pathetic state as described by Shank, but that boilerplate lacks the support of substantial evidence in the record. Dr. Spivey assumed intact activities of daily living, emotional stability, and a work attempt that failed for physical reasons. The ALJ did not move a single block of the foundation upon which Dr. Spivey built her opinions. Mere conclusions drawn from boilerplate add nothing to the basis for rejecting those carefully constructed

opinions.

It appears that one of Plaintiff's overarching points (though not stated in so many words) is that it was improper to discount Dr. Spivey's opinion based on factors of which Dr. Spivey herself was already aware (such as Plaintiff's daily activities and that his work attempt failed for physical reasons, not mental reasons). Plaintiff contends that, by emphasizing those facts, the ALJ did not displace any of the "blocks of the foundation" upon which Dr. Spivey built her opinion. This suggestion is not persuasive. Consistency and supportability are the key factors to consider when evaluating opinion evidence. 20 C.F.R. § 404.1520c(a). The fact that Dr. Spivey was aware of the facts which render her opinion less supportable does not insulate those facts from consideration. Had Plaintiff told Dr. Spivey he builds PCs from scratch in his free time, Plaintiff would agree that the moderate limitation as to task complexity is not supported.

Moreover, when Plaintiff states that "Dr. Spivey assumed intact activities of daily living" Plaintiff suggests that daily activities are either "intact" or impaired. Plaintiff's binary is too simplistic. Dr. Spivey noted that Plaintiff can drive, clean, do chores, take his son to school, and go to the grocery store. The ALJ noted the same facts plus several additional ones: he could care for his dog, manage his medications, prepare meals, use public transportation, use a computer, read, and manage his finances. AR 25 (citing Exhibits C3E; C4E; C3F; and hearing testimony). There is no precise formula for what constitutes "intact" versus impaired activities of daily living. Simply put, the activities Plaintiff reported to Dr. Spivey were not as extensive or indicative of mental functionality as those described in the additional exhibits and hearing testimony cited by the ALJ. Though not an overwhelmingly persuasive basis to reject Dr. Spivey's opinion, the ALJ's reasoning was not unsound.

It is also not entirely clear what Plaintiff means by "The ALJ stated that Dr. Spivey *assumed the pathetic state* as described by Shank, but that boilerplate lacks the support of substantial

evidence in the record." Br. at 9 (emphasis added).  This appears to be taking issue with the ALJ's statement that, "The opinion appears to be based upon the claimant's subjective statements, as there was no mental health evidence to review and consider."  If so, the point is reasonably well taken.  Just because there was no mental health evidence to review does not mean that the opinion was based on Plaintiff's subjective complaints.  Had the ALJ offered no additional reasoning the explanation would fall short insofar as it ignores the importance of Dr. Spivey's mental status exam and other assessments.

Nevertheless, there was a sufficient basis here to reject the opinion, including Plaintiff's reported activities of daily living, that he did not seek or receive mental health treatment during the relevant period for this claim, that he attributed his failed work attempts to his cardiac condition not his anxiety or depression, and the mental status examination and testing performed by Dr. Spivey which was unremarkable save for 2 out of 3 object recall, inability to name the governor, and cognitive functioning at the 19th percentile.

**VI.**   **Conclusion and Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Robert Clark Shank.


IT IS SO ORDERED.

Dated:   __July 7, 2022__              _____**/s/ Gary S. Austin**_____
                                                  UNITED STATES MAGISTRATE JUDGE